## NEWELL S. LEIGHTON

### *v.*

## PARTHENIA HALL.

1. PROCESS — *its requisites.* The 26th section of the 5th article of the constitution declares that "All process, writs and other proceedings, shall run in the name of ' *The People of the State of Illinois.*' "

2. ARREST — *order of the court.* A certified copy of a mere decretal order or rule of a court of chancery, directing the sheriff to attach the body of a party, and detain him in close custody until he shall comply with certain requirements of the court, will not authorize the officer to make the arrest, nor is it his duty to obey the command in the order or rule in that respect.

3. ARREST — *without process — power of the court.* Executive officers of a court may, upon a mere order of the court, detain persons who are in the presence of the court, or who are already in custody; but it does not follow that such an order may be sent into the country, without process, which will authorize an arrest.

4. Before a sheriff can be required to make an arrest, out of the presence of the court, he should be furnished with such process as the constitution prescribes.

WRIT OF ERROR to the Circuit Court of the county of COOK; the Hon. GEORGE MANIERRE, Judge, presiding.

Parthenia Hall filed her bill for a divorce in the Cook Circuit Court, against her husband, Jacob B. Hall, and in the course of the proceedings therein, on the 21st February, 1861, the court entered an interlocutory decree that the defendant pay $100 alimony, *pendente lite,* to enable her to prosecute the suit.

The court ordered the defendant to pay said sum to the sheriff, to whose hands a copy should come for service, by delivering a copy thereof, to be by him deposited with the clerk. "And in default of such payment by the said defendant, it is further ordered by the court that such sheriff do thereupon attach the body of the said Jacob B. Hall, and him safely keep in close custody, until he shall have paid the said sum of one hundred dollars, as aforesaid, together with the costs of such sheriff upon this order, or until he shall be otherwise discharged by the court. And let the clerk give the said complainant a certified copy of this rule, directed to the sheriff of any county in this State to execute; and the sheriff, without requiring pre-payment of his costs by said complainant, make return of his proceedings hereupon, on or before the third Monday of March next, with the said sum of one hundred dollars, or the body of the said defendant here before the court."

On the 28th day of February, 1861, the clerk made a certified copy of this order, but not directed to any sheriff or other person, and not running in the name of the People, which was returned to the clerk's office on the 4th April, with the following indorsement, to wit:

"I return this writ, served by reading the same to the within named Jacob B. Hall, and demanding the money, which was not paid, and cannot be made by law. March 23rd, 1861.            N. S. LEIGHTON, *Sheriff S. C.*"

On the 8th day of May, 1861, a writ of attachment in the name of the People, to the sheriff of Scott county, was issued by the clerk, setting forth the order authorizing its issue, commanding the sheriff, without the pre-payment of his costs and charges, to take the body of Jacob B. Hall, and commit him to the common jail of his county, without bail, until he should have paid the said sum of $100, and $4.45 costs, or until he should have him before the court on the fourth Monday of May.

This writ was returned on the 31st May, with the following indorsement:

"I return this writ not served, as I cannot find the within

named Jacob B. Hall in my county, this the 27th day of May, 1861.             N. S. LEIGHTON, *Sheriff S. C.*

By WM. C. DAVIS, *Dep.*"

On the first day of June a motion was made by Parthenia Hall, in her case against Jacob B. Hall, for an order on Newell S. Leighton, sheriff of Scott county, to pay the said sum of $104.45, for contempt in failing to bring the body of the said Jacob B. Hall.

The court caused a copy of the motion to be served on Newell S. Leighton, by the coroner of Scott county, and stayed the hearing for that purpose.

On the 24th day of June, 1861, the said N. S. Leighton showed cause in writing, under oath, against the rule, as follows, to wit :

1. No fees were advanced to enable him to execute the writ.

2. Jacob B. Hall was and is insolvent.

3. The execution of the writ, by delivering the body in court, would necessarily involve an expense of from $50 to $75, which would be an actual loss.

4. The complainant was unknown to him, and was reputed to be insolvent.

5. When the first writ was returned, he wrote to the complainant's solicitor, explaining these reasons, and proposing to bring the body if the fees were advanced.

6. When the second writ was received, he could not find Jacob B. Hall, who had left the county before the receipt of the writ, without the advice or procurement of the sheriff.

With these causes, N. S. Leighton also filed, in support thereof, the affidavits of T. F. Jerome, and N. M. Knapp, showing that Jacob B. Hall had been hopelessly insolvent and without credit for three years.

On these facts, the motion of complainant for decree against Newell S. Leighton, to pay the alimony allowed the complainant, was submitted to the court, and sustained.

A decree was rendered on the 16th day of March, 1863, ordering the said Newell S. Leighton to pay, without further

notice, into the hands of the clerk, the sum of $104.45 with costs, and that attachment issue to enforce the order.

Leighton brings the record to this court by writ of error, and assigns as error, that the court erred in rendering the final decree against him to pay the provisional alimony.

Mr. W. C. GOUDY, for the plaintiff in error.

The paper sent to the plaintiff in error, dated 28th day of February, 1861, is not a writ, did not authorize an arrest, and if the plaintiff in error had taken the body of Jacob B. Hall, he would have been liable for false imprisonment. This paper is a certified copy of the order on Jacob B. Hall to pay the provisional alimony. The order authorizes the clerk to give the complainant a certified copy directed to the sheriff of any county to execute, and ordered such sheriff to make return of his proceedings thereon without requiring the prepayment of his fees. The certified copy sent to the plaintiff in error was not directed to any sheriff, and, therefore, was not a command to the plaintiff in error, to whose hands it came, to arrest Jacob B. Hall; it did not run in the name of the People, as required by the constitution, and therefore was void as a process, and he was not bound to serve it as such. *Ferris* v. *Crow*, 5 Gilm. 100; *Curry* v. *Hinman*, 11 Ill. 420; *Gorton* v. *Frizzel*, 20 Ill. 291.

Mr. CHARLES C. BONNEY, for the defendant in error, contended that the court had the power to order a witness, a juror, a suitor, or a bystander, into custody, for failing to observe its requirements; and that such order could be enforced without the issue of formal process.

Nor is it necessary that the order should run in the name of the People. *Curry* v. *Hinman*, 11 Ill. 422.

Moreover, the objection that the order of the court for the arrest did not run in the name of the People, cannot be taken, for the first time, in this court.

Mr. Chief Justice Caton delivered the opinion of the Court.

After a careful consideration and examination of this subject, we have arrived at the conclusion that this decree against the sheriff cannot be sustained, for the reason that he was not authorized to arrest Hall, on the order, with a copy of which he was furnished. The twenty-sixth section of the fifth article of the constitution declares, that "All process, writs and other proceedings, shall run in the name of ' *The People of the State of Illinois.*'" No such writ or other such process was issued to the sheriff, commanding him to arrest Hall. He was simply furnished with a copy of an order of the court, adjudging that Hall should pay one hundred dollars to the sheriff to whose hands a copy of the order should come, or, in default thereof, the sheriff should arrest and detain him in custody. The sheriff served the copy of the order on Hall, who did not pay the money, and the sheriff so returned; but he did not arrest Hall as the order directed. Afterwards, an attachment issued in regular form, which did run in the name of the People of the State of Illinois, commanding the sheriff to arrest Hall, which was returned *non est;* and the question is, was it his duty to arrest Hall upon the mere copy of the order with which he was first furnished? We think that order did not clothe the sheriff with sufficient authority to make the arrest. It was neither a writ, nor a process. It did not run in the name of the People. It was simply an order on which such process might have issued. We have a statute which authorizes conservators of the peace to arrest for criminal offenses committed in their presence, and if they make arrests under other circumstances, they do it at their peril, and must take the responsibility of showing that the prisoner has been guilty of a crime. Executive officers of a court, may, upon a mere order of the court, detain persons who are in the presence of the court, or who are already in custody; but it does not follow that such an order may be sent into the country, without process, which will authorize an arrest. But this first order was not in a criminal proceeding. Until it was disobeyed by Hall, it did not furnish grounds even for a

criminal proceeding. It was purely civil in all its features, and the sheriff should have been furnished with such authority as the constitution requires, before he could be required to make the arrest. The decretal order against the sheriff must be reversed.

*Decree reversed.*